# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **ELIZABETH MCALLISTER,** | ) | |
| 4941 Corkwood Drive | | |
| North Royalton, Ohio 44133 | ) | |
| | | |
| Plaintiff, | ) | |
| | | |
| -vs- | ) | **C O M P L A I N T** |
| | | |
| | ) | Trial by Jury Endorsed Hereon |
| **KENT STATE UNIVERSITY** | | |
| 775 Loop Road | ) | |
| Kent, OH 44242 | | |
| | ) | |
| and | | |
| | ) | |
| **MONICA MILLER MARSH, in her** | | |
| **official capacity and individual** | ) | |
| **capacity** | | |
| 775 Loop Road. | ) | |
| Kent, OH 44242 | | |
| | ) | |
| and | | |
| | ) | |
| **PAMELA HUTCHINS, in her official** | | |
| **capacity and individual capacity** | ) | |
| 775 Loop Road. | | |
| Kent, OH 44242 | ) | |
| | | |
| Defendants. | | |

1

## NATURE OF THE ACTION

1.      This is an action brought, *inter alia*, to secure enforcement of federally protected rights of expression concerning a matter of public concern, the exercise of reporting suspected child abuse by a teacher, a mandatory reporter under law, arising out of official government-sanctioned punishment in violation of the First and Fourteenth Amendments to the Constitution of the United States in which the Plaintiff, Elizabeth McAllister, seeks declaratory relief, injunctive relief and damages.

## CLAIMS AND JURISDICTION

2.      This action is initiated pursuant to the Civil Rights Act of 1871, 42 U.S.C. §1983, to redress the deprivation under color of statue, ordinance, regulation, custom or usage of rights, privileges and immunities secured to plaintiff under the First and Fourteenth Amendments to the United States Constitution. Jurisdiction is invoked pursuant to 28 U.S.C §§ 1331 and 1343(3) and (4). To the extent declaratory relief is sought, claims are asserted pursuant to 28 U.S.C. §§ 2201 and 2203.

3.      At all times relevant to this complaint, Defendants have acted under color of law and under color of law as a public university and as public managers and employees exercising governmental power under the color of state law.

## PARTIES

4.      Plaintiff Elizabeth McAllister was employed by Defendant Kent State University and sought to perform her duties free from restrictions of retaliation and unlawful employment practices.

5.      Defendant Kent State University is a public university and employer situated in Portage County, Ohio which employed Plaintiff Elizabeth McAllister from 2014 through May, 2019.

6.      Defendant Monica Miller Marsh was at all relevant times the superior of Plaintiff Elizabeth McAllister and was involved in the decision to retaliate, punish and terminate Plaintiff Elizabeth McAllister's employment because Plaintiff Elizabeth McAllister attempted to protect the welfare of a child in her classroom and because she engaged in expression over a matter of public concern, reporting suspected abuse of a child as a mandatory reporter.

7.      Defendant Pamela Hutchins was at all relevant times, one of the superiors of Plaintiff Elizabeth McAllister and was involved in the decision to retaliate, punish and terminate Plaintiff Elizabeth McAllister's employment because Plaintiff Elizabeth McAllister attempted to protect the welfare of a child in her classroom and because she engaged in expression over a matter of public concern, reporting suspected abuse of a child as a mandatory reporter.

## GENERAL ALLEGATIONS

8.      Plaintiff Elizabeth McAllister reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

9.      In 2014, Plaintiff Elizabeth McAllister was hired by Defendant Kent State University to teach in its Child Development Center.

10.      The Child Development Center at Kent State University is an early-years laboratory located on Kent State University's main campus.

11.      The Child Development Center is used to help teach Kent State University education majors, to provide pre-service teachers with classroom experience working with children, and to provide care and education to children.

12.      After working for Defendant Kent State University part time for a number of years in the Child Development Center's kindergarten classroom, Plaintiff's direct supervisor, Defendant, Monica Miller Marsh, asked Plaintiff Elizabeth McAllister to seek and accept a full-time role in one of the pre-school classrooms for the fall of 2018.

13.      Defendant Miller Marsh indicated to Plaintiff Elizabeth McAllister that the role would be for one year, then she would be moved to the kindergarten classroom on a permanent basis.

14.     Throughout Plaintiff Elizabeth McAllister's employment at Kent State University, she received high praise, good reviews and was respected for her demeanor, skills and devotion to children.

15.     Throughout Plaintiff Elizabeth McAllister's employment at Kent State University, Ms. McAllister was never subjected to sub-par reviews, discipline or placed on an employment improvement plan.

16.     On September 20, 2018, Plaintiff Elizabeth McAllister was approached by a Kent State University student, AF, who was assisting in her classroom.

17.     The student indicated to Plaintiff Elizabeth McAllister that one of the children in the pre-school class, a three-year old child, had made some troubling comments to her at naptime.

18.     Ms. McAllister requested that the student send her a written summary of the events for her review.

19.     On September 21, 2018, Ms. McAllister received an email from AF outlining what had occurred with the three-year-old.

20.     The email contained very graphic and troubling comments from the three-year old, including:

- "At home, my penis grows."
- "my daddy's penis grows too at home."
- "whenever your pee is red, it comes out of your butt. when it is yellow it comes out of your penis."

21.     Later on September 21, 2018, Plaintiff met with her supervisor, Defendant Monica Miller Marsh.

22.     Ms. McAllister showed Defendant Miller Marsh the email from AF and inquired of her how to report the comments made by the three-year-old to children's protective services as she was a mandatory reporter under the law.

23.     Defendant Monica Miller Marsh took the document from Elizabeth McAllister, telling her that she would "take care" of it.

24.     Nearly a month later, on October 18, 2018, after Plaintiff Elizabeth McAllister witnessed the same three-year-old struggle while being dropped off by the child's mother, she asked the mother if she would like to have a conference to discuss what was going on with her child.

25.     The mother told Ms. McAllister she would get back to her with a time to meet.

26.     As soon as the child's mother left, the child continued to show signs of distress including pulling his pants down, squatting down, screaming for his mother and urinating on himself.

27.     At the end of the day, the mother agreed to meet with Plaintiff Elizabeth McAllister the following day, October 19, 2018.

28.     On October 19, 2018, at the conference with the mother and father of the child, Ms. McAllister observed that the father was acting in a hostile manner and made a number of comments which generated concern.

29.     The father repeatedly asked why he was not receiving more photographs of all of the children in his child's classroom.

30.     When asked if he meant that he wanted more photos of his child, he stated that he wanted photos of other children in the classroom as well.

31.     He told Plaintiff Elizabeth McAllister that "this privacy thing is bullshit."

32.     The father then pulled out his phone and showed Ms. McAllister a picture of students other than his son stating that the picture was "beautiful."

33.     Although a few photographs of each of the children were sent to their respective parents, it was not routine for any teacher to send parents specific photographs of other children in the classroom.

34.     Plaintiff Elizabeth McAllister was uncomfortable with the father's request.

35.     When Ms. McAllister asked the mother about the nature of their home life, the mother revealed to her that she would routinely yell at and threaten the three-old all night if he were not cooperative.

36.     Immediately after the conference, Plaintiff Elizabeth McAllister went to her superior, Defendant Monica Miller Marsh, and informed her again that another call to children's protective services should be made to report this new information.

37.     Plaintiff told Defendant Miller Marsh that, due to what she witnessed at her meeting with the parents, she had safety concerns for the child.

38.     The impressions of suspected child abuse, taken as a whole by Ms. McAllister, were reasonable under the circumstances.

39.     Like the experience on September 21st, the experience on October 19th left Plaintiff Elizabeth McAllister with the belief, as a mandatory reporter, that a report needed to be made.

40.     After expressing to Defendant Miller Marsh that another call needed be made to children's protective services, Defendant Miller Marsh was surprisingly unresponsive to her inquiry.

41.     Plaintiff Elizabeth McAllister asked Defendant Miller Marsh if she had ever made the first report to children's protective services about the incident in September, 2018.

42.     Defendant Miller Marsh responded that she never filed the report or made a phone call.

43.     Defendant Miller Marsh told Plaintiff Elizabeth McAllister that she received the information from Ms. McAllister, yet never confirmed with Ms. McAllister that she would necessarily report the information to children's protective services.

44.     Both Plaintiff Elizabeth McAllister and Defendant Miller Marsh were aware that they were mandatory reporters.

45.     Because Defendant Miller Marsh told Ms. McAllister that she would "take care" of the report, Ms. McAllister had no reason to believe that

Defendant Miller Marsh, as a mandatory reporter, would not have reported the first incident.

46.     Concerned both about the child's well-being and with fulfilling her statutory duty, Plaintiff sought guidance on reporting the information.

47.     On October 21, 2018, fearing for the child's safety, acknowledging her duty as a mandatory reporter and concerned that Defendant Miller Marsh would again not report the information, Ms. McAllister emailed Defendant Pamela Hutchins, a director at the school, seeking guidance on reporting the information.

48.     On October 24, 2018, a meeting took place with Defendant Miller Marsh, Plaintiff Elizabeth McAllister and Defendant Pamela Hutchins.

49.     At the meeting, both Hutchins and Miller Marsh told Plaintiff Elizabeth McAllister that they did not believe her concerns about suspected child abuse were meritorious and that children's protective services did not need to be called.

50.     Defendant Pamela Hutchins asked Ms. McAllister if her concerns could "hold up in a court of law."

51.     Defendant Miller Marsh told Plaintiff Elizabeth McAllister about her own childhood and told Ms. McAllister that, if a teacher overheard her talk about her experiences at home, her family would have been torn apart.

52. The longer the meeting went, the more obvious it was to Elizabeth McAllister that she was being discouraged from fulfilling what she believed was her statutory duty to children to report suspected child abuse as a mandatory reporter.

53. Defendants Miller Marsh and Hutchins explained to Plaintiff that the preschooler's father is a "bully" and may have bad parenting skills but what he was doing was not suspected abuse and did not warrant a call to children's protective services.

54. Plaintiff was hurt and shocked that Defendants, Miller Marsh and Hutchins, who were responsible for the safety of dozens of children, were strongly suggesting that it would be improper for Ms. McAllister to make a report to protective children services about her reasonable belief of suspected child abuse.

55. Plaintiff Elizabeth McAllister reiterated to Defendants, Miller Marsh and Hutchins, that she felt that there was a suspicion of abuse and insisted on reporting the incidents to children's protective services.

56. Plaintiff explained to the administrators that she believed, as a mandatory reporter, it was not her job to prove abuse, but simply to report suspicion of abuse.

57. Under Ohio Revised Code §2151.421, teachers are mandatory reporters and are required to report any suspicion of abuse based on facts that would

cause a reasonable person in a similar position to suspect that a child under eighteen years of age has suffered or faces a threat of suffering any physical or mental wound, injury, disability, or condition of a nature that reasonably indicates abuse or neglect.

58.     Ms. McAllister explained to her superiors that her first concern was for the safety of the children and, because of that, children's protective services should be notified.

59.     As the meeting concluded, Defendant Miller Marsh asked Ms. McAllister for one (1) day to "put a plan in place."

60.     During the evening of October 25, 2018, Ms. McAllister emailed Defendant Miller Marsh concerning the state of the plan she proposed.

61.     On October 26, 2018, Defendant Miller Marsh emailed Plaintiff Elizabeth McAllister, informing her that she was unavailable to put a plan in place because she had been in a "mandatory meeting."

62.     On October 27, 2018, Plaintiff Elizabeth McAllister emailed Defendant Miller Marsh, inquiring if the plan would be in place by the following Monday as she was not comfortable waiting any longer to file the report with children's protective services.

63.     On October 28, 2018, Defendant Miller Marsh emailed Ms. McAllister, informing her that she was out of town and would attend to the situation when she returned Monday.

11

64.     On October 29, 2018, Plaintiff Elizabeth McAllister was called into a meeting with most of the leadership team of the school and with the Kent State University Chief of Police.

65.     Around the time of the meeting, Ms. McAllister discovered that other members of the leadership team questioned Defendant Miller Marsh about why the September incidents were never reported to children's protective services.

66.     During the October 29, 2018 meeting, the leadership team discussed the safety procedures for the school in the event that the child's parents came to the school angry.

67.     It was determined that an extra officer could be stationed at the school after the report was made.

68.     Throughout the meeting, Defendant Miller Marsh appeared to downplay the incidents and still appeared to be in favor of not reporting.

69.     At the end of the meeting, Plaintiff McAllister insisted on calling children's protective services immediately.

70.     Plaintiff Elizabeth McAllister made the phone call right after the meeting.

71.     On October 30, 2018, Ms. McAllister was scheduled to be absent from school.

72.     While off work, Plaintiff received a call from EB, an assistant teacher in her classroom.

73.     EB expressed the belief to Ms. McAllister that she feared for the safety of the same three-year old.

74.     Plaintiff Elizabeth McAllister was told that, during drop-off, EB observed the child screaming and witnessed the child's father threatening to hit him.

75.     EB told Plaintiff that when she brought her concerns to Defendant Miller Marsh, EB was told that this was "not reportable."

76.     This was particularly troubling to Plaintiff Elizabeth McAllister because she had a similar experience where Defendant Miller Marsh discouraged reporting to children's protective services during the 2017-2018 school year.

77.     In the 2017-2018 incident, a small child had asked Ms. McAllister to look at her private parts claiming they hurt.

78.     Concerned by the conversation with the little girl, Plaintiff Elizabeth McAllister took the information to Defendant Miller Marsh.

79.     Defendant Miller Marsh responded to the information by stating to the Plaintiff, "What will happen to this black child with a single dad if you call?"

80.     A few days after the October 30, 2018 incident, Ms. McAllister addressed EB's concerns with Defendant Miller Marsh.

81.     Plaintiff Elizabeth McAllister told Defendant Miller Marsh that she, EB and other staff members were concerned for the safety of the child and asked

Marsh Miller what the best way was to handle incidents where the parents were behaving aggressively toward their children.

82.     Defendant Miller Marsh offered no suggestions on how she wanted these aggressive parental activities handled.

83.     On March 6, 2019, Defendant Miller Marsh and Plaintiff Elizabeth McAllister met to discuss Ms. McAllister's performance.

84.     Defendant Miller Marsh said she was very impressed by the work in Ms. McAllister's classroom during the school year and discussed projects that Miller Marsh planned for Plaintiff to continue working on the following year.

85.     In fact, Defendant Miller Marsh encouraged Ms. McAllister to consider presenting her work at a national conference during the following school year.

86.     On March 12, 2019, Ms. McAllister overheard the same three-year old say "I saw a boy sucking on a cow's titties on mama's phone."

87.     On March 13, 2019, Plaintiff heard the child's mother threaten to call the police on him and have him put in jail if he did not cooperate with her.

88.     On or around March 15, 2019, a teacher's aide in Ms. McAllister's classroom reported that the child had been screaming each night prior to pick up.

89.     On April 2, 2019, Plaintiff Elizabeth McAllister received an employment assessment from Defendant Miller Marsh back-dated to December, 2018.

90.     In the back-dated assessment, Defendant Miller Marsh stated that "There was some tension with one family and their child rearing practices throughout the duration of the fall semester, but that has seemed to dissipate over time."

91.     On April 4, 2019, CN, another of the student teachers in Ms. McAllister's classroom, reported to her that the three-year old child told her he is not hungry, but needed to finish all of his food or he would be "in trouble" at home.

92.     On April 9, 2019, a field student reported to Plaintiff Elizabeth McAllister that she saw the three-year old child's face being squeezed in an aggressive manner by his mother.

93.     On April 10, 2019, Ms. McAllister was informed by a teaching assistant at the school that the child never wanted to go home with his dad.

94.     The teaching assistant informed Ms. McAllister that she had heard the child's mother say to the child "this better not be a crying day or it is going to be bad."

95.     On April 10, 2019, Plaintiff's teaching assistant observed the child being picked up.

96.     Plaintiff Elizabeth McAllister's teaching assistant heard the mother say to the child, "If you keep crying, you are going to have a very, very bad night" and reported it to Ms. McAllister.

97.     Based on that event and those which preceded it, Plaintiff Elizabeth McAllister, as a mandatory reporter, made the decision she needed to call children's protective services again.

98.     On April 11, 2019, Elizabeth McAllister informed Defendant Pamela Hutchins that she was going to make another call to children's protective services.

99.     Defendant Hutchins told Ms. McAllister, "Remember, you only pass along what you witnessed."

100.    Elizabeth McAllister was left with the clear sense that Defendant Pamela Hutchins likewise discouraged her from reporting.

101.    Within a few hours, children's protective services called back stating that they were opening a full investigation.

102.    On April 12, 2019, the child began crying loudly in class.

103.    Plaintiff Elizabeth McAllister took the child aside to speak with him.

104.    During the conversation, the three-year-old told Ms. McAllister and another school employee that he did not like his home.

105.    The child told Ms. McAllister he "is afraid of watching the witches on daddy's phone" and he watches them with his sister.

106.    The three-year-old told Ms. McAllister that "Daddy said you need to pull the witch's penis off" and that it wasn't only on the phone.

107.    The child stated that "You reach under the witch's bottom to do it."

108.     Immediately after the conversation, Plaintiff Elizabeth McAllister made a third phone call to children's protective services about the child and his family.

109.     Later on the same day, April 12, 2019, the child's parents met with Defendant Miller Marsh.

110.     Defendant Miller Marsh told the parents that the report to children's protective services had not come from her, knowing the remark to the family could put other teachers and staff at risk by this disclosure.

111.     Following the meeting, Defendant Miller Marsh allowed the parents to roam the school unescorted.

112.     Defendant Miller Marsh knew it was likely that the parents, who were upset, would track down Ms. McAllister.

113.     The parents walked to Ms. McAllister's office with no notice to her and apologized for their child's actions.

114.     Shaken by being confronted by the parents, Ms. McAllister went to the teacher's lounge where she found Defendant Miller Marsh.

115.     Defendant Miller Marsh informed Plaintiff Elizabeth McAllister that the child's parents were pulling him out of school.

116.     On April 15, 2019, Ms. McAllister was called into a meeting with Defendant Miller Marsh, Defendant Hutchins and other staff and teachers.

117.    Defendants, Hutchins and Miller Marsh, informed those in attendance that the child would again be back at the school and that Defendant Miller Marsh permitted the parents to re-enroll him.

118.    Defendant Hutchins told Plaintiff that, in the event she was approached or forced to deal with an unhappy parent, to just use "de-escalation techniques."

119.    On April 16, 2019, Plaintiff met with the chief of campus police who informed her that it was not proper for Defendant Hutchins to tell her to use "de-escalation techniques" and that she should not try to de-escalate a situation involving the parents for her own safety.

120.    Later in the day on April 16, 2019, Plaintiff and other teachers met with Defendant Kent State University's Human Resources Department concerning their safety and well-being.

121.    On or around April 17, 2019, Defendant Hutchins met with one of the other teachers who attended the Defendant Kent State University's Human Resources Department meeting with Plaintiff and questioned her about her whereabouts at the time of the meeting.

122.    The other teacher was intimidated by the inquiry.

123.    Based upon her experience with Defendant Hutchins, Plaintiff Elizabeth McAllister felt threatened by the other teacher being intimidated by Ms. Hutchins for going to human resources.

124. On April 19, 2019, Defendant Miller Marsh conducted an observation of Ms. McAllister's classroom performance.

125. Defendant Miller Marsh later reported to the faculty how wonderful the work had been in Ms. McAllister's classroom.

126. From roughly April 29, 2019 through May 7, 2019, the three-year-old child was taken out of a school by his father to go on a ski trip.

127. When he returned, the child appeared to Plaintiff Elizabeth McAllister to be withdrawn and was experiencing numerous screaming and crying fits.

128. Ms. McAllister reported the information to the administration which chose not to do any follow up about the incident.

129. On May 14, 2019, shortly after the school year ended, Ms. McAllister and Defendant Miller Marsh attended an event where they spoke about attending an upcoming professional development event together.

130. On or around May 29, 2019, children's protective services sent a letter to Ms. McAllister at the Child Development Center that it closed the investigation on the child.

131. The letter was not provided to Plaintiff at the time it was received by Defendant Kent State University.

132. Shortly after children's protective services closed the investigation and unbeknownst to Plaintiff Elizabeth McAllister, on May 31, 2019, Defendant

Miller Marsh prepared a letter to Ms. McAllister, which was not mailed to her, that she was subject to "non-renewal" of employment for the next school year.

133.    On June 6, 2019, Defendant Miller Marsh called to inform Ms. McAllister she was choosing not to renew her contract.

134.    When Ms. McAllister followed up for information with Defendant Kent State University, she was told they were not obligated to give her a reason for her non-renewal.

135.    Ms. McAllister was told to come to the school to collect her personal items.

136.    On June 7, 2019, Ms. McAllister was met by a staff member from the Defendant Kent State University's Human Resources Department who stated she had to be present to help her "pack out."

137.    On June 7, 2019, while Plaintiff Elizabeth McAllister was packing up and moving her personal items out of the school, Defendant Kent State University's Human Resources Department's officer handed Ms. McAllister the un-mailed May 31st letter of non-renewal with the notification letter from child protective services indicating the case had been closed.

138.    Plaintiff Elizabeth McAllister's employment was terminated because she consistently expressed to her superiors a matter of public concern, the suspected abuse of a child and her duty to report it.

139.     Plaintiff Elizabeth McAllister's employment was terminated because she consistently expressed to her superiors a matter of public concern, the suspected abuse of a child, her duty to report it and made reports to children's protective services over the objections of her superiors.

140.     Until Plaintiff began reporting the incidents related to the child, Plaintiff had an excellent record with her employer and had received positive reviews.

141.     Even with Plaintiff's expression concerning a matter of public concern, Defendants knew that she was a high-performing, excellent teacher who was extolled by the very person instrumental in ending her public employment because of her expression.

142.     Until Plaintiff began reporting to children's protective services, Defendants had given Ms. McAllister numerous indications they intended to renew her contract.

143.     Plaintiff Elizabeth McAllister expressed and continues to express a matter of public concern, the suspected abuse of a children and the duty to report as a mandatory reporter.

144.     Plaintiff Elizabeth McAllister's employment was terminated because she consistently expressed to her superiors a matter of public concern, the suspected abuse of a child, her duty to report it and made reports to children's protective services over the objections of her superiors and because she

complied as a teacher with the Mandatory Reporter Act, Ohio Revised Code §
2151.421, over the objections of her supervisors.

## Count I

## RETALIATION FOR THE EXERCISE OF FIRST AMENDMENT RIGHTS OVER MATTERS OF PUBLIC CONCERN
(as to all defendants)

145.    Plaintiff Elizabeth McAllister reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

146.    Plaintiff Elizabeth McAllister, as a public-school teacher, is a mandatory reporter under Ohio Revised Code § 2151.421.

147.    When Plaintiff learned of and when she observed behavior that resulted in a reasonable belief that suspicion of abuse of a child occurred, Ms. McAllister openly expressed the belief that she and her superiors had a duty to report.

148.    When Plaintiff learned of and when she observed behavior that resulted in a reasonable belief that suspicion of abuse of a child occurred, Ms. McAllister spoke out on a matter of serious and important matters of public concern, the duty of teachers to address suspected child abuse.

149.    The duty to speak out about suspected child abuse is a matter of deep and vital public concern.

150.    Plaintiff Elizabeth McAllister's speech and expression were protected by the First Amendment to the Constitution of the United States.

151.    Ohio Revised Code § 2151.421 was enacted to protect children from abuse and requires the reporting of any suspicion of abuse by certain groups of people.

152.    Teachers such as Plaintiff Elizabeth McAllister are mandatory reporters.

153.    Mandatory reporting by teachers such as Elizabeth McAllister exists as a critical public policy to insure the safety and security of Ohio's children.

154.    Plaintiff Elizabeth McAllister was an excellent and successful teacher who would have been otherwise renewed except for the discouragement and interference with management employees at Defendant Kent State University for her attempt to report and/or reporting of the suspected abuse of a child.

155.    Defendants planned to retain and to renew Ms. McAllister until she spoke out and reported the suspected abuse of a child.

156.    In retaliation against Plaintiff Elizabeth McAllister for her exercise of rights protected by the First Amendment to the Constitution of the United States, Defendants' acts and conduct interfered, obstructed and diminished a strong public policy making teachers mandatory reporters when they suspect the abuse of a child.

157.    In retaliation against Plaintiff Elizabeth McAllister for her exercise of rights protected by the First Amendment to the Constitution of the United States, Defendants' acts and conduct interfered, obstructed and diminished her ability to remain a public-school teacher.

158.    In retaliation against Plaintiff Elizabeth McAllister for her exercise of rights protected by the First Amendment to the Constitution of the United States, Defendants' acts and conduct destroyed her career as an accomplished, competent and successful public-school teacher.

159.    Defendants' dismissal and non-renewal of an employee for dutifully following the mandates set forth in Ohio Revised Code § 2151.421 jeopardize and compromise the vital public policy of adults who hold positions of trust and responsibility in Ohio of protecting children by reporting suspected abuse.

160.    Plaintiff Elizabeth McAllister had received no negative reviews or comments prior to her reporting.

161.    Defendants' only basis for Plaintiff's termination was her attempt to have reported and/or reporting of suspected child abuse to children's protective services.

162.    The acts and conduct of Defendants were intentional, malicious and in wanton and reckless disregard of the rights and feelings of Elizabeth McAllister.

163.    Plaintiff Elizabeth McAllister has sustained significant emotional injuries arising out of the Defendants' unlawful practices and arising out of Defendants' termination of Plaintiff's employment.

164.    Plaintiff has suffered financially as a result of Defendants' actions, including, but not limited to, her lost income, benefits and tuition credits.

<u>Count II</u>

## <u>DUE PROCESS RIGHTS ENSURED UNDER THE FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES</u>
<u>(as to all defendants)</u>

165.    Plaintiff Elizabeth McAllister reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

166.    Defendant represented that Plaintiff Elizabeth McAllister was a high-performing public sector teacher with no material negative conduct warranting an end of her public service.

167.    Defendants provided no notice, information or hearing to inform Plaintiff that her performance was anything other than fully satisfactory and that Defendants knew that the non-renewal was not based on sound reason, but for unconstitutional reasons and for reasons violating public policy.

168.    Defendants knew that their actions were fundamentally unfair and done in derogation of a process where teachers otherwise serving as high-performing teachers are not non-renewed.

169.    Contrary to their obligations of fairness required by the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States, Defendants' only basis for the termination of Elizabeth McAllister was her attempt to have reported and/or reporting of suspected child abuse to children's protective services.

170.     The acts and conduct of Defendants were intentional, malicious and in wanton and reckless disregard of the rights and feelings of Elizabeth McAllister.

171.     Plaintiff Elizabeth McAllister has sustained significant emotional injuries arising out of the Defendants' unlawful practices and arising out of Defendants' termination of Plaintiff's employment.

172.     Plaintiff has suffered financially as a result of Defendants' actions, including but not limited to, her lost income, benefits and tuition credits.

## Count III

### INTENTIONAL INFLICTION OF EMOTION DISTRESS
#### (as to defendants Monica Miller Marsh and Pamela Hutchins in their individual capacities)

173.     Plaintiff Elizabeth McAllister reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

174.     Witnessing the consequence of suspected abuse of a child is a traumatizing and disturbing experience for any reasonable person.

175.     When a person such as Plaintiff Elizabeth McAllister is subordinate to superiors in the workplace who have a mandatory duty to report suspected abuse of a child and is discouraged, dissuaded and punished by the intentional actions of her superiors, the resulting infliction of emotional and mental distress is knowingly severe and consequential.

26

176.     Defendants, Monica Miller Marsh and Pamela Hutchins, engaged in the intentional infliction of serious emotional and mental distress because they knew the Plaintiff Elizabeth McAllister to be a caring, devoted teacher and knew, but for their obstruction of her obligation to report suspected abuse of a child, she would remain a caring, devoted teacher employed by Kent State University.

177.     The only way to stop Plaintiff Elizabeth McAllister from reporting suspected child abuse in the future would be to end the employment relationship.

178.     By attempting to dissuade Plaintiff Elizabeth McAllister on various occasions from reporting suspected abuse of a child, Miller Marsh and Hutchins knew they could inflect serious emotional and mental distress.

179.     Defendants, Monica Miller Marsh and Pamela Hutchins, knowingly interfered with the obligations they created in having Plaintiff work at Kent State University and knowingly intended to injure her for engaging in a protected activity under the laws of the State of Ohio.

180.     Defendants, Monica Miller Marsh and Pamela Hutchins, knew they violated the laws of the State of Ohio by covering up suspected abuse of a child and knew the only way to continue to avoid their statutory duty would be to punish Plaintiff Elizabeth McAllister by exerting their exclusive power to punish her.

181.    The exclusive power held by the Defendants against Plaintiff Elizabeth McAllister would be to terminate her through a non-renewal despite her high performance as a teacher.

182.    Defendants, Miller Marsh and Hutchins, knew it was likely to inflict serious emotional and mental injury when they punished Plaintiff for attempting to report and reporting the suspected abuse of a child.

183.    Defendants, Miller Marsh and Hutchins, knowingly and maliciously retaliated against Plaintiff Elizabeth McAllister with a consciousness of the consequences of severe suffering.

184.    When Plaintiff Elizabeth McAllister inquired about the reason for termination, the Defendants refused to disclose the real reason for the non-renewal.

185.    Attempting to dissuade a mandatory reporter of abuse from performing the act of reporting and terminating her employment for making the report exceeds reasonable bounds of decency and is intolerable in a civilized community.

186.    The actions of Defendants, Monica Miller Marsh and Pamela Hutchins, in attempting to dissuade Plaintiff Elizabeth McAllister and then terminating her employment for making the report above their objections, proximately caused Plaintiff Elizabeth McAllister's emotional injury, psychological injury and loss of quality of life.

187.     The mental anguish suffered by Plaintiff Elizabeth McAllister is serious, consequential and should not have to be endured by any mandatory reporter simply seeking to fulfill an ethical, moral and legal duty to protect children.

188.     The acts and conduct of Defendants, Monica Miller Marsh and Pamela Hutchins, were intentional, malicious and in wanton and reckless disregard of the rights and feelings of Plaintiff Elizabeth McAllister.

189.     Plaintiff Elizabeth McAllister has sustained significant emotional injuries arising out of the Defendants, Monica Miller Marsh and Pamela Hutchins, unlawful practices and arising out of Defendants' termination of her employment.

WHEREFORE, Plaintiff Elizabeth McAllister respectfully requests the Court to grant the following relief:

A.     Declare that the acts and conduct of the Defendants violates the First Amendment to the Constitution of the United States, is in violation of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States and furthered the emotional distress of the Plaintiff;

B.     Permanently enjoin the Defendants, their officers, agents, employees, successors, assigns, and all persons in active concert of participation with it, from engaging in any future employment practices which would deter a mandatory reporter from performing their duties as prescribed by the Ohio Revised Code;

C.     Order Defendants to institute and to otherwise carry out policies, practices and programs which

provide mandatory reporters the opportunity to perform their required duties free from retaliation;

        D.    Order Defendants to re-engage Elizabeth McAllister as a teacher, enjoin any future retaliation and for other affirmative relief necessary to eradicate the effects of their unlawful employment practices;

        E.    Grant to the Plaintiff Elizabeth McAllister and against the Defendants, Monica Miller Marsh and Pamela Hutchins, in their individual capacities, jointly and severally, appropriate compensatory damages;

        F.    Grant to the Plaintiff Elizabeth McAllister and against Defendants, Monica Miller Marsh and Pamela Hutchins, appropriate punitive and exemplary damages;

        G.    Grant to the Plaintiff reasonable attorney fees and costs as provided by statute;

        H.    Grant such further relief as the Court deems just, equitable and in advance of the public interest.

*s/Avery Friedman*

Avery Friedman (0006103)
AVERY FRIEDMAN & ASSOCIATES
701 The City Club Building
850 Euclid Avenue
Cleveland, Ohio 44114
P: (216) 621-9282
F: (216) 621-9283
avery@lawfriedman.com

*s/Jared S. Klebanow*

Jared S. Klebanow (0092018)
KLEBANOW LAW, LLC
701 The City Club Building
850 Euclid Avenue
Cleveland, Ohio 44114
P: (216) 621-8230
jklebanow@klebanowlaw.com

*Attorneys for Plaintiff Elizabeth McAllister*

## TRIAL BY JURY DEMANDED

<em>s/Avery Friedman</em>

_____

Plaintiff Elizabeth McAllister hereby demands trial by jury.