PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ELIZABETH MCALLISTER, | ) | |
| | ) | CASE NO. 5:19CV2207 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| KENT STATE UNIVERSITY, *et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendants. | ) | **ORDER** [Resolving ECF No. 6] |
| | ) | |
| | ) | |

Pending is Defendants' motion to dismiss.  ECF No. 6.  The matter has been briefed.

ECF Nos. 6, 16, and 17.  For the reasons explained below, Defendants' motion is granted.

Plaintiff's claims are dismissed.

## I. Background

Plaintiff Elizabeth McAllister was a pre-school teacher employed at Defendant Kent

State University's Child Development Center.  ECF No. 1 at PageID #: 4, ¶ 9.  Plaintiff claims

that when she was hired in the fall of 2018, she was told she would be hired on a permanent basis

the following year as a kindergarten teacher.  *Id.*  ¶¶ 12-13.  This litigation centers on actions

Plaintiff allegedly took out of concern for the safety of a child[1] in McAllister's classroom during

her tenure.

---

[1] The child is only identified as a three-year-old male who was in Plaintiff's
classroom during the 2018-2019 academic year.

(5:19CV2207)

### A. The First Incident

Plaintiff was working with a college student, identified as AF, in the pre-school classroom.  *Id.* at PageID #: 5, ¶ 16.  In late September 2018, AF approached Plaintiff and informed Plaintiff that AF was concerned about some troubling comments of a graphic sexual nature one of the children made to her at nap time.[2]  *Id.* ¶¶ 17-20

On September 21, 2018, Plaintiff met with her supervisor, Defendant Dr. Monica Miller Marsh, to report this incident.  *Id.* at PageID #: 6, ¶ 21.  Plaintiff inquired how to report the comments made by the three-year-old to children's protective services ("CPS").  *Id.* ¶ 22.  Dr. Miller Marsh allegedly told Plaintiff that she would "take care" of it.  *Id.* ¶ 23.

### B. The Second Incident

On October 18, 2018, Plaintiff saw the same child being dropped off at school and approached the mother to see if she would like to schedule a conference.  *Id.* ¶¶ 24-25.  When the child's mother left, he pulled his pants down, squatted down, screamed for his mother, and urinated on himself.  *Id.* ¶ 26.  The mother agreed to have a conference with Plaintiff the following day.  *Id.* ¶ 27.

During the conference, the child's father asked why he was not receiving more photographs of the children in his child's classroom.  *Id.* at PageID #: 7, ¶¶ 29-31.  The father allegedly showed a picture of other children in the classroom to Plaintiff stating that the picture was "beautiful."  *Id.* ¶ 32.  Plaintiff was uncomfortable with the father's request for pictures of

---

[2] The child's comments can be read at ECF No. 1 at PageID #: 5, ¶ 20.

2

(5:19CV2207)

the children in her classroom.  *Id.* ¶¶ 33-34.  The mother indicated at the meeting that she

"would routinely yell at and threaten the [child] all night if he were not cooperative."  *Id.* ¶ 35.

After the conference with the parents, Plaintiff again approached Dr. Miller Marsh and

informed her that Plaintiff believed another call to CPS was warranted.  *Id.* at PageID #: 7-8, ¶¶

36-39.  Plaintiff alleges that Dr. Miller Marsh was "surprisingly unresponsive to" Plaintiff's

suggestion.  *Id.* at PageID #: 8, ¶ 40.  During the meeting, Dr. Miller Marsh informed Plaintiff

that she had never made a call to CPS regarding the September incident.  *Id.* ¶¶ 42-43.

Concerned for the child's safety, Plaintiff reached out via email to Defendant Pamela

Hutchins, a director at the Child Development Center.  *Id.* at PageID #: 9, ¶ 47.  Three days later,

Defendants Dr. Miller Marsh and Hutchins held a meeting with Plaintiff and informed her that

they did not believe calling CPS was warranted and that her concerns might not "hold up in a

court of law."  *Id.* ¶¶ 49-50.  Plaintiff believed that she was being discouraged from "fulfilling

what she believed was her statutory duty to children to report suspected child abuse as a

mandatory reporter."  *Id.* at PageID #: 10, ¶ 52.  Defendants allegedly acknowledged that the

child's father is a "bully," but told Plaintiff he should not be under suspicion of potential child

abuse.  *Id.* ¶ 53.  Plaintiff retorted that she suspected abuse and believed she needed to report

her observations to CPS and that her job as a mandatory reporter was to report suspected abuse

under Ohio Rev Code § 2151.421, not to prove it.  *Id.* at PageID #: 10-11, ¶¶ 54-58.  Defendant

3

(5:19CV2207)

Dr. Miller Marsh asked Plaintiff to give her one day to "put a plan in place." *Id.* at PageID #: 11, ¶ 59. During the next three days, Plaintiff reached out to Dr. Miller Marsh but was never told what the plan was. *Id.* ¶¶ 60-63.

### C. Meeting with the School's Leadership Team

On October 29, 2018, Plaintiff had a meeting with some members of the school's leadership team and the Kent State University Chief of Police. *Id.* at PageID #: 12, ¶ 64. Some staff members had learned about the child's behavior and comments in September and raised concerns about Dr. Miller Marsh's decision not to contact CPS. *Id.* ¶ 65. The meeting agenda included discussing safety procedures in the event that an angry parent came to school in response to a report to CPS and stationing an extra officer at the school after a report was made. *Id.* ¶ 66. According to Plaintiff, Dr. Miller Marsh "appeared to downplay the incidents and still appeared to be in favor of not reporting." *Id.* ¶ 68. After the meeting, Plaintiff contacted CPS to report suspected child abuse. *Id.* ¶¶ 69-70.

### D. The Third Incident

The day after the meeting, Plaintiff did not show up to work because she was scheduled to be absent that day. *Id.* ¶ 71. During her day off, she received a call from EB, another assistant teacher in the classroom. *Id.* ¶ 72. EB reported that during drop-off, she had observed the child screaming and saw the father threaten to hit the child. *Id.* at PageID #: 13, ¶¶ 73-74. EB informed Plaintiff that she told Dr. Miller Marsh what occurred but Dr. Miller Marsh informed EB it was "not reportable." *Id.* ¶ 75. Plaintiff approached Dr. Miller Marsh asking

4

(5:19CV2207)

how the teacher should handle aggressive parents.  *Id.* at PageID #: 13-14, ¶¶ 80-81.  Dr. Miller

Marsh allegedly offered no suggestions.  *Id.* at PageID #: 14, ¶ 82.

### E. The Fourth Incident

On March 12, 2019, Plaintiff heard the same child make some sexually explicit remarks

regarding content on his mother's phone.  *Id.* ¶ 86.  The next day, Plaintiff heard the mother

threaten to call the police and have the child put in jail if he refused to cooperate.  *Id.* ¶ 87.  Two

days later, a teacher's aide in Plaintiff's classroom reported that the child screamed each night

prior to being picked up by his parents.  *Id.* ¶ 88.

### F. The Fifth Incident

On April 4, 2019, a field student reported to Plaintiff that the child had said he was not

hungry but that he needed to finish all of his food or he would be in trouble at home.  *Id.* at

PageID #: 15, ¶ 92.  A teaching assistant told Plaintiff that the child never wanted to go home

with the father.  *Id.* ¶ 93.  She informed Plaintiff that she heard the mother telling the child, "this

better not be a crying day or it is going to be bad" and "[i]f you keep crying, you are going to

have a very, very bad night."  *Id.* ¶¶ 94-96.

After learning of these events, Plaintiff again called CPS regarding the child.  *Id.* at

PageID #: 16, ¶ 97.  Plaintiff informed Defendant Hutchins about her intent to call and Hutchins

responded, "Remember, you only pass along what you witnessed."  *Id.* ¶¶ 98-99.  Plaintiff

believed Hutchins was discouraging her from reporting the suspected abuse.  *Id.* ¶ 100.  CPS

(5:19CV2207)

contacted Plaintiff a few hours later and informed her they were opening a full investigation.  *Id.* 101.

### G. The Sixth Incident

On April 12, 2019, Plaintiff pulled the child aside after he began crying loudly in class. *Id.* ¶¶ 102-03.  The child told Plaintiff and another school employee that he did not like home because he was afraid of sexual content on the father's phone.[3]  *Id.* ¶¶ 104-07.  Plaintiff called CPS that same day.  *Id.* at PageID #: 17, ¶ 108.

### H.  Meetings with Teachers and the Chief of Police

On the same day that Plaintiff reported her concerns to CPS, the child's parents met with Dr. Miller Marsh.  *Id.* ¶ 109.  Dr. Miller Marsh allegedly told the parents that she was not the one who had contacted CPS.  *Id.* ¶ 110.  After the meeting, Plaintiff alleges that Dr. Miller Marsh "allowed the parents to roam the school unescorted."  *Id.* ¶ 111.  The child's parents approached Plaintiff and apologized for their child's behavior.  *Id.* ¶ 112.  Plaintiff was "[s]haken" by this interaction with the child's parents.  *Id.* ¶ 113.  Plaintiff went to the teacher's lounge, where she found Dr. Miller Marsh, who informed Plaintiff that the parents were pulling the child out of the school.  *Id.* ¶¶ 114-15.

A few days later, Plaintiff was called into a meeting with Defendants Dr. Miller Marsh and Hutchins and other school staff and teachers.  *Id.* ¶ 116.  Defendants told those attending the meeting that the child had been re-enrolled in the school.  *Id.* at PageID #: 18, ¶ 117.  Plaintiff

---

[3] The child's comments can be viewed at ECF No. 1 at PageID #: 16, ¶¶ 105-07.

(5:19CV2207)

was told that if she was approached by an unhappy parent, she should use de-escalation

techniques.  *Id.* ¶ 118.

Plaintiff met with the chief of campus police the following day and informed the

individual what Hutchins had said about the de-escalation techniques.  *Id.* ¶ 119.  The chief

allegedly told Plaintiff that she should not attempt to use de-escalation techniques if she had to

interact with the child's parents for her own safety.  *Id.*  Later that same day, Plaintiff, along with

other teachers, met with Kent State University's Human Resources Department concerning their

safety and well-being.  *Id.* ¶ 120.

On April 17, 2019, Defendant Hutchins met with one of the teachers in attendance of the

previous day's meeting and questioned that individual about the meeting.  *Id.* ¶ 121.  Plaintiff

alleges the other teacher was intimidated by Hutchins' questions.  *Id.*  ¶ 122.

**I. The Final Incidents**

The child was absent from school from April 29, 2019 through May 7, 2019 on a ski-trip

with his father.  *Id.* at PageID #: 19, ¶ 126.  When the child returned, Plaintiff observed that he

appeared to "be withdrawn and was experiencing numerous screaming and crying fits."  *Id.* ¶

127.  Plaintiff informed the school administration about the chid's behavior but they did not act

on Plaintiff's report.  *Id.* ¶ 128.

**J. Plaintiff's Contract is Not Renewed**

On May 29, 2019, CPS sent a letter to Plaintiff informing her that it closed the

7

(5:19CV2207)

investigation on the child.  *Id.* ¶ 129.  Defendant Kent State University received the letter.  *Id.* ¶ 130.  Two days later, Dr. Miller Marsh prepared a letter informing Plaintiff she was subject to "non-renewal."  *Id.* at PageID #: 19-20, ¶ 132.  On June 6, 2019, Dr. Miller Marsh contacted Plaintiff and informed her that her contract with the Child Development Center was not being renewed.  *Id.* at PageID #: 20, ¶ 133.  The next day, when Plaintiff was collecting her personal items, she received the letter Dr. Miller Marsh had written and the letter from CPS.  *Id.* ¶¶ 134-37.  When Plaintiff sought an explanation for her contract not being renewed, she was told that Defendants were not obligated to give her a reason.  *Id.* ¶ 134.

**K. Performance Reviews**

During the school year, Plaintiff had met with Dr. Miller Marsh to discuss her performance.  In March 2019, Dr. Miller Marsh said she was impressed by Plaintiff's work in the classroom and told her she should present her work at a national conference.  *Id.* at PageID #: 14, ¶¶ 84-85.

In April 2019, Plaintiff received an employment assessment from Dr. Miller Marsh that was back-dated to December 2018.  *Id.* ¶ 89.  The assessment provided: "There was some tension with one family and their child rearing practices throughout the duration of the fall semester, but that has seemed to dissipate over time."  *Id.* at PageID #: 15, ¶ 90.

On April 19, 2019, Dr. Miller Marsh conducted an observation of Plaintiff's classroom and informed other faculty "how wonderful the work had been."  *Id.* at PageID #: 19, ¶¶ 124-25.

(5:19CV2207)

Nearly a month later, Plaintiff and Dr. Miller Marsh attended an event where they discussed

upcoming professional development.  *Id.* ¶ 129.

### L. Plaintiff's Claims for Relief

Plaintiff alleges the following claims under 42 U.S.C. § 1983: (1) Defendants retaliated

against her for exercising her First Amendment right to report the suspect the suspected abuse of

a child, (2) she was fired from her position in violation of the Due Process Clause of the

Fourteenth Amendment, and (3) intentional infliction of emotional distress.  Plaintiff seeks

injunctive relief against Defendant Kent State University and Defendants Dr. Miller Marsh and

Hutchins ("individual Defendants") in their official capacities.  In addition, she seeks

compensatory damages against the individual Defendants in their individual capacities.

## II. Standard of Review

To survive a Fed. R. Civ. P.12(b)(6) motion to dismiss, a plaintiff's complaint must

allege enough facts to "raise a right to relief above the speculative level." *Ass'n of Cleveland*

*Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Fed. R. Civ. P. 8(a)(2) requires only that a

pleading contain "a short and plain statement of the claim showing that the pleader is entitled to

relief."  However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286

(1986)).  A complaint requires "further factual enhancement," which "state[s] a claim to relief

(5:19CV2207)

that is plausible on its face." *Id.* at 557, 570.  A claim has facial plausibility when there is enough factual content present to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When a claim lacks "plausibility in th[e] complaint," that cause of action fails to state a claim upon which relief can be granted. *Twombly*, U.S. 550 at 564.

Additionally, when a party files a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P.12(b)(1) in conjunction with other Rule 12 motions, the court generally considers the Rule 12(b)(1) motion first.  *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction[.]").  "It is the plaintiff's burden . . . to prove that this court has jurisdiction over [the plaintiff's] claim." *Kiser v. Reitz*, 765 F.3d 601, 607 (6th Cir. 2014).  "[W]here a defendant argues that the plaintiff has not alleged sufficient facts in her complaint to create subject matter jurisdiction, the trial court takes the allegations in the complaint as true." *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003).

### III. Discussion

### A. "Person" Under Section 1983

"To state a claim under § 1983, a plaintiff must plead and prove that she has been deprived of a right secured by the Constitution or federal laws, by one acting under color of state law." *Weberg v. Franks*, 229 F.3d 514, 522 (6th Cir. 2000).  "It is well established that States and agencies and instrumentalities of the State, including public universities and their boards of

10

(5:19CV2207)

trustees are not 'persons' subject to suit under Section 1983." *Sheppard v. Kent State Univ.*, No. 5:15 CV 417, 2015 WL 4743893, at *3 (N.D. Ohio Aug. 11, 2015); *Min Li v. Qi Jiang*, 38 F. Supp. 3d 870, 879 (N.D. Ohio 2014).  Accordingly, Plaintiff's claims against Kent State University are dismissed.

State officials acting in their official capacities are not considered to be "persons" under Section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  State officials acting in their official capacity sued for injunctive relief, however, do constitute a "person" under Section 1983 because "'official capacity' actions for prospective relief are not treated as actions against the State." *Id.* at 71 n.10 (citations omitted).  In addition, state officials sued in their individual capacities are considered a "person" under Section 1983.  *Hafer v. Melo*, 502 U.S. 21, 23 (1991).  Accordingly, Plaintiff's remaining claims against the individual Defendants may proceed.

Next, the Court considers whether any of these claims are barred by the Eleventh Amendment.

### B. Eleventh Amendment Sovereign Immunity

Actions brought against the State or an "arm of the state" are subject to the doctrine of sovereign immunity under the Eleventh Amendment.  *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005).  The Eleventh Amendment bars actions brought for monetary damages against state officials in their official capacity.  *See Boone v. Kentucky,* 72 F. App'x 306, 307 (6th Cir. 2003).

11

(5:19CV2207)

Moreover, Kent State University, "as an arm of the State, is immune from suit under the

Eleventh Amendment . . . ." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 571 (6th Cir. 2000).

Under the *Ex Parte Young* exception, Eleventh Amendment immunity does not attach to

suits "filed against a state official for purely injunctive relief enjoining the official from violating

federal law." *Ernst*, 427 F.3d at 358-59 (citing *Ex parte Young*, 209 U.S. 123, 155-56 (1908)).

Although the *Ex parte Young* exception permits suits for prospective relief against the individual

Defendants in their official capacities, it does not extend to actions for injunctive relief sought

against the arms of the State, such as Kent State University.  *See Carten v. Kent State Univ.*, 282

F.3d 391, 397-98 (6th Cir. 2002); *Underfer v. Univ. of Toledo*, 36 F. App'x 831, 834 (6th Cir.

2002).  Accordingly, the Eleventh Amendment bars Plaintiff's claims against Kent State

University and the *Ex Parte Young* exception permits Plaintiff's federal claims against Dr. Miller

Marsh and Hutchins in their official capacities for injunctive relief.[4]  To the extent that Plaintiff's

state law claim is for injunctive relief against the individual Defendants, this claim is foreclosed

by the Eleventh Amendment.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106

(1984).

---

[4] Defendants aver that Plaintiff is seeking injunctive relief based on state law rather than federal law.  ECF No. 17 at PageID #: 171.  This contention stems from Plaintiff's assertion that "[t]he overriding relief in this litigation seeks to enjoin KSU and its top officials from prohibiting reporting of suspected abuse by teachers, private citizens or combination of the two."  ECF No. 16 at PageID #: 161. Even if Ohio Rev. Code § 2151.421 were the catalyst for Plaintiff's suit, the Court's imposition of injunctive relief would be predicated on compliance with the constitutional provisions, not enforcement of Ohio's mandatory reporting law.

(5:19CV2207)

Moreover, Plaintiff's claims for monetary relief against the individual Defendants in their

individual capacities are not barred by the Eleventh Amendment.  *Hafer*, 502 U.S. at 30-31

("That is, the Eleventh Amendment does not erect a barrier against suits to impose 'individual

and personal liability' on state officials under § 1983.")

In sum, Plaintiff's claims against Defendant Kent State University are dismissed.  To the

extent Plaintiff seeks injunctive relief under her state law claim, this claim is barred by the

Eleventh Amendment.  At this juncture, the remaining claims are: (1) the First Amendment

retaliation and Fourteenth Amendment Due Process claims for injunctive relief against the

individual Defendants in their official capacities; and (2) the First Amendment retaliation,

Fourteenth Amendment Due Process, and state law intentional infliction for emotional distress

claims for monetary damages against the individual Defendants in their individual capacities.[5]

The Court considers the remaining claims below.

**C.  First Amendment Retaliation**

To demonstrate retaliation under the First Amendment, Plaintiff has to show "(1) that her

statements were protected under the First Amendment; (2) that she suffered an adverse

employment action; (3) and that the adverse action was motivated at least in part as a response to

---

[5] Defendants cannot meaningfully contend that the individual Defendants were not on notice that Plaintiff was raising claims for monetary damages in their individual capacities.  *See* ECF No. 1 at PageID #: 1, 29-30.  Moreover, even if there were any ambiguity, the individual Defendants resolved it by raising the defense of qualified immunity in their Answer, indicating they were aware of their potential individual liability.  *See Garcia v. Dykstra*, 260 F. App'x 887, 895 (6th Cir. 2008).

(5:19CV2207)

exercise of her constitutional rights." *Fox v. Traverse City Area Pub. Sch. Bd. of Educ.*, 605 F.3d 345, 348 (6th Cir. 2010) (citations and internal quotations and alterations omitted).  Speech of a public employee is only subject to First Amendment protections when "(1) the speech addressed a matter of public concern, (2) the employee spoke as a private citizen rather than as an employee pursuant to her official duties, and (3) the employee's speech interest outweighs the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Mayhew v. Town of Smyrna, Tenn.*, 856 F.3d 456, 462 (6th Cir.2017) (internal citations removed).

Plaintiff maintains that the individual Defendants retaliated against her for expressing a matter of public concern, namely the suspected abuse of a child.  Plaintiff's claim hinges on the second element of the speech of a public employee analysis, whether she was speaking as a private citizen as opposed to as a public employee.  As an educator, Plaintiff is mandated to report suspected child abuse under Ohio Rev. Code § 2151.421.  "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).  The focus "is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 573 U.S. 228, 240 (2014).  Plaintiff cannot be considered a private citizen speaking on a matter of public concern because the law dictated that she speak in such a manner as part of her official duties.  Other courts addressing

(5:19CV2207)

this issue have reached the same conclusion. *See, e.g., Chiat v. Elko Cty. Sch. Dist.*, No. 3:16 cv 00328 HDM WGC, 2018 WL 1472561, at *3 (D. Nev. Mar. 26, 2018) (finding that a teacher's report of sexual abuse was not protected under the First Amendment because Nevada law mandated she report the incident); *Smith v. Ill. Sch. Dist. U-46*, 120 F. Supp. 3d 757, 773 (N.D. Ill. 2015) ("Smith's argument that his complaints about alleged misconduct were made as a 'concerned private citizen,' . . . are to no avail because as a teacher, he was required by Illinois law to report suspected child abuse . . . ."); *Condiff v. Hart Cty. Sch. Dist.*, 770 F. Supp. 2d 876, 889 (W.D. Ky. 2011) (reporting sexual harassment was not protected speech because it was required under the district's sexual harassment policies and procedures); *Buchanan v. Sumner Cty. Bd. of Educ.*, No. 3:10 00499, 2011 WL 3875862, at *3 (M.D. Tenn. Aug. 31, 2011); *Trujillo v. Bd. of Educ. of the Albuquerque Pub. Sch .*, Nos. CIV 02 1146 JB/LFG, CIV 03 1185 JB/LFG, 2007 WL 2461629, at *10-11 (D.N.M. June 5, 2007); *Pagani v. Meriden Bd. of Educ.*, No. 3:05 CV 01115 (JCH), 2006 WL 3791405, at *3 (D. Conn. Dec. 19, 2006). Accordingly, Plaintiff's claim fails with respect to the second element.

Plaintiff's reliance on *Parker v. School District of Philadelphia*, 346 F. Supp. 3d 738 (E.D. Pa. 2018) and *Reed-Seeger v. School District of Philadelphia*, No. 14 0287, 2014 WL 7404133 (E.D. Pa. Dec. 30, 2014) is unavailing. First, although *Parker* and *Reed-Seeger* found that whether an employee's speech is part of their job responsibilities is a mixed question of law and fact, this approach has been flatly rejected by the Sixth Circuit. *See Mayhew*, 856 F.3d at 463-64 ("We have consistently applied the question of law standard post-*Lane* . . . . In sum, the

15

(5:19CV2207)

district court did not err by concluding that the determination as to whether Mayhew engaged in protected speech was one of law.").

Second, *Parker* is distinguishable from the facts of this case in one crucial aspect. Among the comments made by plaintiff in *Parker,* her speech in part concerned a complaint about an employee's failure to comply with the mandatory child abuse reporting laws. 346 F. Supp. 3d at 749. Against this backdrop, the *Parker* court found that "[t]his reporting requirement does not clearly extend to reports that the District mishandled the suspected child abuse." *Id.* Plaintiff's claim, however, is not the same as this particular one in *Parker.*[6] Whereas the plaintiff in *Parker* was allegedly retaliated against for using her speech to criticize the actions of other government actors, in the case at bar, Plaintiff's First Amendment claim is grounded in her own reporting of suspected child abuse pursuant to her duties. Plaintiff has not provided any facts that suggest that her reports to CPS included complaints of how the individual Defendants mishandled the suspected child abuse. There is a critical difference between using the speech to criticize alleged government abuse and merely reporting an event when one is statutorily obligated to do so.

Third, although the *Parker* and *Reed-Seeger* courts heavily relied heavily on *Lane,* it would be inappropriate to extend *Lane* to the context of an educator[7] reporting suspected child

---

[6] Although *Parker* did also concern the plaintiff's own reporting, the Court rejects this portion of the *Parker* court's analysis for the reasons explained above.

[7] The plaintiffs in *Reed-Seeger* and *Parker* were respectively a high school counselor and a lead clinician hired by an independent contractor working for a school

(continued...)

16

(5:19CV2207)

abuse.  In *Lane*, the employee was fired after he truthfully testified in trial and cooperated with an investigation with the Federal Bureau of Investigations ("FBI") about matters regarding his work.  *Lane*, 573 U.S. at 231-235.  The core holding in *Lane* was that the employee's speech was protected because he gave "truthful sworn testimony, compelled by subpoena, *outside the scope of his original job responsibilities*."  *Id.* at 238 (emphasis added); *see also Mayhew*, 856 F.3d at 465 (noting that the plaintiff's suggestion "does not comport with *Lane*'s instruction that we focus on his 'ordinary job responsibilities' and *Garcetti*'s mandate that we look at job duties *practically*.") (emphasis in original).  The facts in *Lane* are inapposite to the matter before the Court.  Testifying and working with the FBI were not part of Lane's job's duties.  In stark contrast, an educator is legally obligated to report child abuse and this duty is directly intertwined with her position as a teacher.  Plaintiff underscores this point by stating that it was not her job to prove abuse but to report suspected abuse.  ECF No. 1 at PageID #: 10, ¶ 56.  The plaintiff in *Lane* testified about matters he learned during the course of his work but did not testify as part of his official duties.  Lane's testimony constituted "speech that simply relates to public employment or concerns information learned in the course of public employment."  *Lane*, 573 U.S. at 239.  Plaintiff, on the other hand, not only learned about the suspected child abuse while serving as an educator but also reported the incidents in compliance with Ohio's mandatory reporting law.  Plaintiff's duty to report child abuse falls squarely within her

---

[7](...continued)
district respectively.  *Reed-Seeger*, 2014 WL 7404133, at *6; *Parker*, 346 F.Supp. 3d at 743-44.

(5:19CV2207)

responsibilities as an educator.  Against this backdrop, Plaintiff spoke as a public employee and not as a private citizen.

Plaintiff avers that she made several reports and "[w]hether those additional follows up and reports were being made privately or as a mandatory report is a fact question requiring discovery."  ECF No. 16 at PageID #: 162.  To further this contention, Plaintiff claims that there is a question whether her reporting the suspected abuse to her supervisor is legally obligated in the same manner as directly contacting the state agency.  *Id.*  Contrary to Plaintiff's assertions, reporting about the child's safety to the individual Defendants further indicates that the speech was made as a public employee rather than as a private citizen.  *See Burgess v. Paducah Area Transit Auth.*, 387 F. App'x 538, 545 (6th Cir. 2010).

Accordingly, Plaintiff has failed to state a claim under the First Amendment and this claim must be dismissed.

### D. Fourteenth Amendment Procedural Due Process

To properly make a claim of a violation of her procedural due process rights, Plaintiff must demonstrate "(1) [she] had a life, liberty, or property interest protected by the Due Process Clause; (2) [she] was deprived of this protected interest; and (3) the state did not afford [her] adequate procedural rights.  *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 904 (6th Cir. 2014) (citation omitted).  In the public employment context,  Plaintiff "must first establish that she enjoyed a property interest in her position . . . ."  *Bailey v. Floyd Cty. Bd. of Educ. By & Through Towler*, 106 F.3d 135, 141 (6th Cir. 1997).  In order to demonstrate a property interest protected

18

(5:19CV2207)

by the Constitution, a public employee must demonstrate "a legitimate claim of entitlement " to continued employment.  *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).  "A legitimate claim of entitlement 'must be grounded in some statute, rule, or policy.'" *Waters v. Drake*, 105 F. Supp. 3d 780, 790 (S.D. Ohio 2015) (quoting *Hughlett v. Romer-Sensky*, 497 F.3d 557, 567 (6th Cir. 2006)).  "A mere 'unilateral expectation' of continued employment does not create a constitutionally protected interest." *Kennard v. Wray*, 19 F.3d 19, 1994 WL 56932, at *4 (6th Cir. Feb. 24, 1994) (unpublished table decision) (citations omitted).  Absent any property interest, Plaintiff is not entitled to any rights guaranteed under the Due Process Clause. *Bailey*, 106 F.3d at 141.

The Court looks to state law to determine whether a property interest has been vested. *Roth*, 408 U.S. at 577.  "A property interest can be created by a state statute, a formal contract, or a contract implied from the circumstances." *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 565 (6th Cir. 2004) (citations omitted).  Plaintiff was not vested with any statutory right to future employment.  *See Ohio Rev. Code. § 124.34*; *Christophel v. Kukulinsky*, 61 F.3d 479, 482 (6th Cir. 1995) ("Finally, unclassified civil servants have no property right to continued employment.") (citation omitted).  Instead, her claim hinges on whether there was a formal contract or a contract implied from the circumstances.

Plaintiff cannot demonstrate an independent basis to claim a protected property interest beyond the one-year term guaranteed under the contract.  *See Blazy v. Jefferson Cty. Reg'l Planning Comm'n*, 438 F. App'x 408, 412-15 (6th Cir. 2011).  Moreover, "[n]o constitutional

(5:19CV2207)

entitlement to procedural due process can logically arise when the decision-maker's power is wholly discretionary." *McClain v. Nw. Cmty. Corr. Ctr. Judicial Corr. Bd.*, 440 F.3d 320, 330 (6th Cir. 2006); *see also Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005) ("Our cases recognize that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion.") (citation omitted).

A property interest may be created when there are "mutually explicit understandings" of the claim of entitlement. *Perry v. Sindermann*, 408 U.S. 593, 601 (1972). Property interests "can . . . be created . . . by an implied contract . . . . however, the sufficiency of the claim of entitlement must be decided by reference to state law." *Bishop v. Wood*, 426 U.S. 341, 344 (1976). When a party does not have an express contract, "an employee's right to continued employment may be based on principles of implied contract and promissory estoppel."[8] *Kennard*, 1994 WL 56932, at *5 (citing *Mers v. Dispatch Printing Co.*, 483 N.E.2d 150, 153-55 (Ohio 1985)). Plaintiff hones in on the times she was allegedly told by the individual Defendants that her contract would be renewed the following year and into the near foreseeable future. But "standing alone, praise with respect to job performance and discussion of future

---

[8] Plaintiff cannot claim she had a property interest under either of these theories because she had a one-year contract subject to renewal with Defendants. *See Buckholz v. Bowling Green State Univ.*, No. 2004 06879, 2006 WL 322300, at *5 (Ohio Ct. Claims Jan. 20, 2006) ("Plaintiff's employment was governed by a one-year contract. Therefore, plaintiff was not an employee at will.")

20

(5:19CV2207)

career development will not modify the employment at-will relationship." *Helmick v. Cincinnati Word Processing, Inc.*, 543 N.E.2d 1212, 1216-17 (Ohio 1989); *see also Buren v. Karrington Health, Inc.*, No. 00AP-1414, 2002 WL 58930, at *3 (Ohio Ct. App. Jan. 17, 2002) ("However, discussion of future career development or vague promises of future benefits or opportunities will not support a promissory estoppel claim.").  Moreover, she has not provided any facts to suggest that she "actually relied on any representations and took any detrimental action." *Kennard*, 1994 WL 56932, at *6 ; *see also Sagonowsky v. The Andersons, Inc.*, No. L 03 1168, 2005 WL 217023, at *12 (Ohio Ct. App. Jan. 28, 2005) (finding, *inter alia*, that plaintiff could not rely on promissory estoppel theory because she could not demonstrate that she relied on the specific promises made to her).

Because Plaintiff cannot demonstrate she had a constitutionally protected property interest, her Due Process Claim is dismissed.[9]

**E. Intentional Infliction of Emotional Distress**

With regard to this state law claim against the individual Defendants in their individual capacities[10], the Court has no jurisdiction over this claim because the Ohio Court of Claims must

---

[9] Since the Court has found that neither of Plaintiff's First or Fourteenth Amendment rights were violated, the Court need not decide whether the individual Defendants are entitled to qualified immunity on these claims.

[10] As mentioned above, to the extent that Plaintiff's state law claim is brought seeking injunctive relief against the individual Defendants in their official capacities, it is barred by the Eleventh Amendment.  *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 520-21 (6th Cir. 2007).

(5:19CV2207)

first determine whether the individual Defendants are entitled to personal immunity under Ohio Rev. Code §§ 9.86 and 2743.02(F). *See McCormick v. Miami Univ.*, 693 F.3d 654, 664-65 (6th Cir. 2012) (" McCormick's state law claims against the Defendants  Appellees in their individual capacity are barred under the Ohio Revised Code §§ 9.86 and 2743.02(F) . . . . Both provisions work in tandem."); *Haynes v. Marshall*, 887 F.2d 700, 705 (6th Cir. 1989) ("[The Court of Claims must first determine that an employee is not entitled to the immunity provided for in Revised Code section 9.86."). Because the Ohio Court of Claims has not determined whether the individual defendants are entitled to immunity, the Court has no jurisdiction over this claim. *McCormick*, 693 F.3d at 665. Accordingly, the state law claim is dismissed without prejudice.

## IV. Conclusion

For the reasons explained above, all of Plaintiff's claims are dismissed.


IT IS SO ORDERED.


    April 16, 2020                               */s/ Benita Y. Pearson*
Date                                               Benita Y. Pearson
                                               United States District Judge

22